SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Raymond Daniels (A-90-13) (073504)**

**Argued October 7, 2015 -- Decided February 10, 2016**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, in the context of a trial record that included evidence establishing an incomplete affirmative defense, the Court considers the circumstances under which a trial court may instruct a jury on an affirmative defense over a defendant's objections.

In early 2009, detectives from the Asbury Park and Neptune Police Departments identified James Fairley as a suspect in three Monmouth County bank robberies. Following his arrest, Fairley confessed to all three robberies and implicated purported accomplices, including defendant Raymond Daniels, who Fairley claimed assisted him in writing the ransom note used in the first two robberies. Fairley explained that defendant gave him a writing pad and made suggestions on what to write. In exchange for the help, Fairley gave defendant some heroin and a few hundred dollars. Fairley asserted that defendant never accompanied him to any of the robberies. Defendant denied participation in the robberies but admitted to providing Fairley with the writing pad and making content suggestions. Defendant explained that, at the time, the two men were using heroin together in his room. He confirmed that Fairley gave him some heroin, but was emphatic that it was not provided as payment for assisting with the note. Defendant was charged with second-degree conspiracy to commit robbery and two counts of second-degree robbery.

At defendant's trial, Fairley testified that he wrote one ransom note on defendant's pad while they were using intravenous heroin and watching television. However, contrary to his statement to police, Fairley insisted that defendant never suggested any content for the note, and that, although he gave defendant heroin, he did not give him money as reimbursement for his help. Fairley also testified that defendant repeatedly reiterated his desire not to be involved in the robberies. The State introduced portions of Fairley's contradictory police interview, but Fairley insisted that he was experiencing heroin withdrawal during the interrogation and had divulged incriminating evidence against defendant in order to gain leniency and admission to a detox program. Defendant did not testify, but his statements to police were introduced into evidence.

In light of the potential confusion arising from defendant's statements to police and Fairley's testimony, the State sought a jury instruction on the affirmative defense of renunciation. Defense counsel objected since he had neither raised the affirmative defense during trial nor requested its inclusion at the jury charge conference. Counsel further asserted that it was impossible for defendant to meet the element of renunciation requiring that he have thwarted the crime, and that it was inconsistent with the defense's overall contention that defendant never intended to participate in the robberies at any point.

Despite counsel's repeated objections, the court instructed the jury that, if it found that the State proved the conspiracy and robbery charges beyond a reasonable doubt, it should consider whether defendant met the elements of the affirmative defense of renunciation. The court explained renunciation in detail, noting that, in order to find it, the jury needed to be satisfied by a preponderance of the evidence that defendant thwarted or caused to be thwarted the commission of the offense. The jury found defendant guilty as an accomplice to the first robbery, but not guilty as an accomplice to the second robbery or of conspiracy to the commit the robberies. On September 2, 2010, defendant was sentenced to a ten-year prison term, with an eighty-five percent period of parole ineligibility.

Defendant appealed, contending that the trial court's decision to issue the renunciation charge prejudiced his defense. The Appellate Division affirmed in an unpublished decision. It found that the trial court appropriately tailored the charge, noting that it did not charge the jury that defendant had the burden of proving renunciation. The Court granted defendant's petition for certification to address the issue of whether it was proper for the trial court to have given a jury charge on the affirmative defense of renunciation. 217 N.J. 588 (2014).

**HELD:** In the context of a trial record that contains evidence of an incomplete affirmative defense and where the potential for jury confusion exists, a trial court may, over a defendant's objections, issue a modified jury charge on the affirmative defense in order to elucidate legal principles pertinent to the evidence. In so doing, the court must balance the need to educate the jury and the need to protect the defendant's rights. Here, the trial court's affirmative defense charge on renunciation unfairly prejudiced the defense, requiring reversal and remand for a new trial.

1. Renunciation is an affirmative defense to accomplice liability under which an actor is not guilty if he proves, by a preponderance of the evidence, that he abandoned his efforts to commit the crime or otherwise prevented its commission. Although the bar is slightly higher, renunciation also is a defense to conspiracy, requiring that, after conspiring to commit the crime, the co-conspirator informed the authorities about the conspiracy and thwarted the crime or caused the crime to be thwarted. In both instances, the renunciation must be complete and voluntary. (pp. 13-15)

2. In State v. Walker, 203 N.J. 73 (2010), the Court determined that even if defense counsel does not request an affirmative defense charge, it should still be given when the evidence clearly indicates that it is appropriate. In State v. R.T., 205 N.J. 493 (2011), the Court addressed the question of instructing the jury on an affirmative defense despite the defendant's objection. There, the Appellate Division found that a charge should only be given over defendant's objection where the facts clearly indicate its appropriateness. A three-justice concurrence agreed, finding that the evidence in R.T. was insufficient to support the affirmative defense, and emphasizing that affirmative defenses should not generally be imposed on unwilling defendants. (pp. 16-20)

3. Courts deciding whether to charge an affirmative defense must conduct a fact-sensitive, case-by-case analysis. R.T. identified a number of factors for courts to consider when the record contains evidence supporting such a charge, including whether counsel is surprised, how the case was tried, whether the affirmative defense is incompatible with defendant's trial position, or whether the instruction would prejudice the defense. However, R.T. did not address how a court should approach a situation like the one here where the trial narrative imperfectly matches an affirmative defense but also may contain facts that a jury might not understand how to evaluate unless provided with an explanation of legal factors relating those disputed facts to both the elements of the crime and the affirmative defense. In those circumstances, it behooves the court to articulate a way for the jury to evaluate the facts as they have been developed through competing presentations. Although a defense should not typically be interposed on a defendant against his wishes, a trial court is not limited to the stark choice between giving an affirmative defense charge over a defendant's objection, or no instruction at all. Instead, legal guidance that bears on a jury's proper assessment of the State's and defense's proofs can be conveyed without resort to the affirmative defense framework. This approach is particularly suited for accomplice liability cases. (pp. 20-23)

4. Where the criminal trial record presents evidence of an imperfect or incomplete affirmative defense, the court must consider both the need to educate the jury on how to evaluate the evidence from a legal perspective and the need to protect the defendant's rights and not undermine his defense. When not all of the elements of an affirmative defense are present and a defendant objects to the charge, a court should assess: (1) the nature and extent of the evidence before the jury; (2) the risk of jury confusion; and (3) the factors identified in R.T. Following this assessment, the court may conclude that it is appropriate to issue a modified affirmative defense jury charge instructing the jury on all important legal concepts relating to liability under the charged crimes. (pp. 23-25)

5. Here, the Court is compelled to reverse defendant's conviction. The renunciation instruction foisted on defendant an affirmative defense that he did not want and could not meet. In the form in which it was delivered, it unfairly prejudiced his trial strategy by undermining his true defense, which was that he never intended to conspire, aid, or assist in the crimes. Nonetheless, the record presented evidence of an incomplete set of facts viewed from the perspective of the affirmative defense of renunciation. Specifically, the jury heard evidence suggesting that defendant was an accomplice, but also suggesting that defendant wanted nothing to do with the robberies. Thus, in assessing the factual record, the court could reasonably conclude that there was a substantial risk of jury confusion unless the jury was told that, in the event it found that defendant's intent matched Fairley's intent to commit the crimes, abandonment alone was insufficient for acquittal based on renunciation. A limited charge to that effect would have informed the jury without being incompatible with defendant's position at trial. However, rather than such a streamlined instruction, the given charge tracked renunciation principles in full, leaving defendant to combat an unwanted affirmative defense that was inconsistent with his defense. This approach was confusing and sent mixed messages to the jury instead of elucidating principles pertinent to the evidence. Consequently, the charge as given prejudiced the defense. (pp. 25-27)

        The judgment of the Appellate Division is **REVERSED**, defendant's conviction is **REVERSED**, and the matter is **REMANDED** to the trial court for further proceedings.

        **CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

RAYMOND DANIELS, a/k/a
RAYMOND DANIELSS, TOOKIE
DANIELS, RAYMOND DANIELLS,

    Defendant-Appellant.


        Argued October 7, 2015 – Decided February 10, 2016

        On certification to the Superior Court,
        Appellate Division.

        Brian P. Keenan, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney).

        Mary R. Juliano, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Christopher J.
        Gramiccioni, Acting Monmouth County
        Prosecutor, attorney).

        Ian C. Kennedy, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).


    JUSTICE LaVECCHIA delivered the opinion of the Court.

    In this appeal, we consider whether the trial court erred

in instructing the jury about the affirmative defense of

renunciation. Defendant Raymond Daniels was charged with

conspiracy and as an accomplice to certain robberies. Defendant did not request a renunciation charge and did not want one. There is no dispute that the facts necessary to satisfy the statutory elements of that affirmative defense were not present. The robberies were not thwarted. They were committed, but by a co-defendant.

Based on the State's evidence, the co-defendant's initial statement to police implicated defendant as a participant in the crimes' planning stage. However, at trial, that co-defendant testified differently, and favorably for the defense strategy that defendant never wanted any part in the robberies being planned and executed by the co-defendant. The State successfully importuned the trial court to charge the jury on renunciation as a curb against potential jury confusion -- namely, that the jury would not know how to evaluate evidence it heard regarding defendant's alleged involvement in preparations for the robberies, despite his claim that he did not want to be involved. In opposing that request, defendant maintained that he should be the master of his defense, except in limited circumstances, and that nothing in this case justified foisting on him an affirmative defense that he claimed undermined his defense strategy.

At bottom, this appeal is about how courts should go about educating juries. When evidence of an imperfect or incomplete

2

defense is presented, there are twin concerns to consider: (1) the need to educate the jury about how to evaluate, from a legal perspective, evidence it has heard, in keeping with both the court's responsibility to administer the justice system and the jury's truth-finding function; and (2) the need to protect a defendant's rights and to not undermine the defense that has been advanced at trial. It is not enough to simply determine that all elements of an affirmative defense are not present. With this opinion, we identify considerations that should govern a trial court when confronted with situations such as occurred here. We are compelled to reverse defendant's conviction and remand for a new trial consistent with the guidance provided in this opinion.

I.

We glean the following facts from the testimony and evidence presented at defendant's trial, which included statements made by defendant and the principal participant in the robberies, co-defendant James Fairley, during police interviews.

Between January and February 2009, detectives from the Asbury Park and Neptune Police Departments (detectives) investigated three bank robberies that had occurred in relatively rapid succession in Monmouth County. The first took place on January 14, 2009, at PNC Bank in Asbury Park; the

second on January 22, 2009, at First Atlantic Credit Union in Neptune (First Atlantic Bank); and the third on February 12, 2009, at TD Bank North in Neptune.  Through their investigation, detectives obtained surveillance videos that were used to identify a suspect, Fairley, who was located and arrested in Atlantic City.

While being interviewed by detectives, Fairley confessed to committing all three robberies.  However, he also implicated purported accomplices, including defendant, in an attempt to obtain leniency and to secure admission into a detox program prior to being sent to jail.  Specifically, Fairley stated during his interview that defendant assisted him in writing the ransom notes used in the first two robberies.  According to Fairley, defendant gave him a writing pad and advised him that an effective ransom note demands large bills and threatens the teller.  Fairley stated that, in exchange for defendant's assistance, Fairley gave him some heroin that the two had purchased and a few hundred dollars.  It is undisputed that defendant never accompanied Fairley to any of the robberies.

After Fairley implicated defendant as an accomplice, detectives questioned defendant.  Defendant denied any participation in the three robberies but did admit to providing Fairley with the writing pad and making a few suggestions about the content of the ransom note, such as "no dye money."  That

4

occurred while he and Fairley were using heroin together in defendant's room. Defendant corroborated Fairley's allegation that it was defendant who went to buy heroin for the pair and that Fairley gave some of that heroin to defendant. However, defendant was emphatic that the heroin was owed to him by Fairley and that it was not provided to him as a payment for assisting with the ransom note. Throughout the interview, defendant maintained that he never intended to participate in any of the robberies and that he repeatedly expressed to Fairley his unwillingness to participate in them.

After the interview, defendant was arrested and charged, in connection with two of the robberies, with second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:1-1 (count one); and two counts of second-degree robbery, N.J.S.A. 2C:15-1 (counts two and three). Prior to defendant's trial, Fairley pleaded guilty to all three robberies and agreed to testify about defendant's involvement in two of them. Defendant did not testify at trial, but his statements to detectives were introduced into evidence.

Fairley was called as a State's witness. He testified that he wrote one ransom note on defendant's writing pad while the two were using heroin intravenously and watching television in defendant's room. Just as he had told detectives during his pretrial interview, Fairley testified that defendant did not

5

accompany him to any of the three robberies; however, this time Fairley stated that defendant was conversing only about the television show while Fairley was writing the note and that defendant did not actually suggest any content to include in the note. Fairley also testified that he gave defendant heroin, but he denied ever giving defendant money as reimbursement for assisting with the ransom note. Furthermore, Fairley highlighted the numerous occasions and statements in which defendant had reiterated his desire not to be involved in the robberies. Because part of Fairley's testimony was inconsistent with what he had said in his pretrial interview, the State introduced into evidence portions of Fairley's statement to police. When confronted with those earlier statements, Fairley defended the truthfulness of his trial testimony, stating that he was experiencing heroin withdrawal during his interrogation and explaining that he had divulged incriminating evidence against his purported accomplice in an effort to gain leniency in the form of being admitted to a detox program.

At the jury charge conference, the State asked the court to instruct the jury on the affirmative defense of renunciation for all three charges. The State argued that defendant's statements to police, as well as Fairley's testimony about defendant not wanting to be involved with the robberies, would be confusing for the jury. The State expressed concern that the jury might

6

view those statements as exculpatory but would not have the legal principles of renunciation to guide it in its assessment of that evidence.

Defense counsel strenuously objected to the charge on renunciation because he had neither raised the affirmative defense during the trial nor requested that it be included at the jury charge conference. Further, defense counsel argued that renunciation was inconsistent with its overall contention that defendant never intended to participate in the robberies at any point. Importantly, defense counsel argued that it was impossible for defendant to meet the element of renunciation that requires defendant to thwart the crime. Because the crimes occurred, defendant clearly did not thwart them, a fact that the trial court acknowledged. Over defense counsel's repeated objections, the trial court issued a charge incorporating language on the affirmative defense of renunciation.

In its instruction to the jury, the trial court stated that it was the State's burden to prove the conspiracy and robbery charges beyond a reasonable doubt, and if the jury found that the State met that proof requirement, then it should consider whether defendant met the elements of the affirmative defense of renunciation. The trial court first explained the renunciation principles for the conspiracy charge:

7

Even if you are satisfied and find beyond a reasonable doubt that [defendant] committed the crime of conspiracy as alleged in the indictment, you must nevertheless find him not guilty if you find that afterwards he informed the authorities of the existence of the conspiracy, including his participation in it, and that he was thereby successfully thwarting or causing to be thwarted, that is, the preventing or causing to be prevented the commission of any offense in furtherance of the conspiracy. In order to find [defendant] not guilty of conspiracy based upon a renunciation as I have defined it here, you must be satisfied that the circumstances of his going to the authorities manifested a voluntary and complete renunciation of his criminal purpose.

The presence of a renunciation does not have to be established to your satisfaction beyond a reasonable doubt. Instead, a lesser standard of proof is what's required. You must find renunciation, if you are satisfied by a preponderance of the evidence or the greater weight of the evidence that [defendant] renounced the alleged crime in the manner in which the law required it as I have defined.

Then, after explaining the elements and burdens for accomplice liability, the trial court explained renunciation for robbery:

Even if you are satisfied and find beyond a reasonable doubt that [defendant] committed the crime of robbery as an accomplice as alleged in the indictment, you must nevertheless find him not guilty of that offense if you find it is more likely than not that he renounced his involvement by doing the following: Terminating his complicity under circumstances manifesting a complete and voluntary renunciation of the crime prior to the commission of the offense, under the legal standard which I just described to you.

8

> The presence of a renunciation as I have defined it does not have to be established to your satisfaction beyond a reasonable doubt. Instead a lesser standard of proof is what is required. You can find renunciation if you are satisfied by a preponderance of the evidence or the greater weight of the evidence that [defendant] renounced the alleged crime of robbery as an accomplice.

On the second day of jury deliberations, the jury found defendant guilty as an accomplice to the first robbery committed at PNC Bank (count two), N.J.S.A. 2C:15-1. The jury found defendant not guilty as an accomplice on count three with respect to the second robbery at First Atlantic Bank, and also not guilty on count one as to conspiracy to commit both robberies.[1] On September 2, 2010, the trial court sentenced defendant to a ten-year prison term, with an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant appealed, arguing that the trial court's decision to issue the renunciation charge prejudiced his defense.[2] Specifically, defendant contended that the court erred in charging the jury on the affirmative defense because it was not

---

[1] The jury heard conflicting statements about whether defendant had any involvement in the second robbery. At trial, Fairley testified that he wrote the ransom note for the second robbery himself, without defendant's input or awareness. Fairley initially told detectives that defendant helped in composing the notes for both robberies.

[2] A second argument advanced is not relevant to this appeal.

9

possible for defendant to meet the elements of renunciation as he did not take any affirmative steps to prevent the commission of the crime, let alone successfully thwart the crime. The Appellate Division affirmed defendant's conviction in an unpublished opinion. Critical to the panel's analysis was that, in its view, the trial court "tailored the charge" and "declined to charge the jury that defendant had the burden of proving renunciation." The panel determined that there was sufficient evidence in the record to justify the renunciation charge, and that, when viewed in its totality, the charge neither prejudiced defendant nor unfairly impinged on his defense strategy.

We granted defendant's petition for certification to address the issue of whether it was proper for the trial court to have given a jury charge on the affirmative defense of renunciation. State v. Daniels, 217 N.J. 588 (2014). We also granted amicus curiae status to the New Jersey Attorney General (Attorney General).

## II.

### A.

Defendant argues that issuance of a jury charge on the affirmative defense of renunciation, over the objection of defendant, is contrary to this Court's direction in State v. Walker, 203 N.J. 73 (2010). Defendant cites Walker's proposition that when a defendant requests an affirmative

10

defense, the trial court should provide the charge if the record provides a rational basis for doing so; on the other hand, if counsel does not request the affirmative defense, the court should issue a charge on the affirmative defense sua sponte only if all of the elements of the affirmative defense are clearly indicated by the evidence. Defendant points to State v. R.T., 205 N.J. 493 (2011), as further support for his argument that a "clearly indicated" standard was applicable in his circumstances because he did not request the disputed affirmative defense charge. Under either a rational basis or clearly indicated standard, defendant contends it was error for the trial court to have given a renunciation charge because he plainly could not satisfy all elements of the affirmative defense.

According to defendant, the court mischaracterized his statements about not wanting to participate in the robbery as indicative of an attempted renunciation. By coloring those statements with the renunciation affirmative defense instruction, defendant claims that the charge given by the court prejudiced him. Defendant's trial defense maintained that he did not intend to join in the robberies that Fairley committed. The affirmative defense, defendant says, presumes complicity in the robberies and therefore undermines that defense.

B.

11

The State concedes that it was impossible for defendant to meet the elements of renunciation and that the trial court was aware of this impossibility. However, the State argues that the charge nonetheless was proper because the trial court appropriately sought to provide the jury with guidance on how to evaluate defendant's potentially confusing statements about his desire not to participate in the robberies. Instead of allowing the jury to formulate its own theory about renunciation and what it requires, the State maintains that the trial court provided pertinent information on the legal concept to avoid any confusion. The State contends that using the renunciation charge for that purpose was reasonable because the jury could plausibly conclude from the trial testimony that defendant agreed to accompany Fairley to the robberies but then changed his mind.

Importantly, the State asserts that charging the jury with renunciation did not prejudice defendant because the trial court did not tell the jury that defendant had raised or requested the charge, and the trial court did not charge that defendant had the burden to prove renunciation. The State further contends that there was no prejudice because the trial court told the jury it could use the information about defendant not wanting to participate in the robbery for any purpose.

C.

12

Amicus curiae, the Attorney General, argues that the renunciation charge was proper because, absent that guidance to the jury, there was too great a risk of confusion about defendant's statements that he did not want to be involved with the robberies and the jury could have reached its verdict based on speculation, misunderstanding, or confusion. If defendants were allowed to plant the seeds of an affirmative defense in the jurors' minds without the court actually explaining the legal principles of such a defense, the Attorney General contends that would allow for gamesmanship. The Attorney General asserts that defendant's narrative thread clearly implicated the renunciation defense, and at every opportunity. The Attorney General contends that there was no prejudice to defendant because the trial court molded the jury instructions to the facts, and lack of prejudice is evident from defendant's acquittal on the robbery count involving First Atlantic Bank and on the count of conspiracy to commit robbery.

### III.

As this case requires examination of the impact of the renunciation charge provided in defendant's trial, we begin with the basic principles of renunciation.

Renunciation is an affirmative defense to accomplice liability. N.J.S.A. 2C:2-6(e)(3) and 2C:5-1(d). Under accomplice liability, the accomplice is "guilty of the same

crime committed by the principal if he shares the same criminal state of mind as the principal." State v. Whitaker, 200 N.J. 444, 458 (2009). In accomplice liability cases, the jury must be instructed on the necessary findings of a shared intent between accomplice and principal and that the accomplice directly or indirectly participated or assisted in the commission of the criminal act. State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993). However, under the defense of renunciation, an actor is not guilty of accomplice liability if he proves, by a preponderance of the evidence, that he abandoned his efforts to commit the crime or otherwise prevented its commission. N.J.S.A. 2C:2-6(e)(3). But, renunciation is not complete when mere abandonment does not prevent the commission of the crime. N.J.S.A. 2C:5-1(d). In such a case, defendant must take affirmative steps to successfully prevent the commission of the crime. Ibid.

Renunciation is also a defense to conspiracy, although it has a slightly higher bar. A renunciating co-conspirator must prove, by a preponderance of the evidence, that after conspiring to commit the crime, he subsequently informed the authorities about the conspiracy and therein thwarted the crime or caused the crime to be thwarted. N.J.S.A. 2C:5-2(e). In both accomplice liability and conspiracy, the renunciation must be complete and voluntary. N.J.S.A. 2C:5-1(d) and 2C:5-2(e). "To

14

be voluntary, the abandonment of criminal conduct must reflect a change in the defendant's purpose or a change of mind that is not influenced by outside circumstances." State v. Alston, 311 N.J. Super. 113, 121 (1998). "To be complete the abandonment must be permanent, not temporary or contingent. And, of course, the claimed renunciation must have resulted in avoidance of the crime." Id. at 121-22.

In the instant case, we must determine whether the trial court erred in instructing the jury, over defense counsel's objections, on the affirmative defense of renunciation when requested to do so by the State. Appropriate and proper charges to a jury are essential for a fair trial. State v. Savage, 172 N.J. 374, 387 (2002). That said, what is at stake here is not simply whether a jury instruction was omitted, was improperly molded to the facts, or was erroneously delivered. Were any of those the complained-of errors here, we would be guided by the normal standard that "erroneous [jury] instructions on material issues are presumed to be reversible error." State v. Marshall, 173 N.J. 343, 359 (2002). Instead, we have the unusual circumstance of a jury having been instructed on an affirmative defense that defendant did not assert, did not want, and argued was in conflict with his defense. With that in mind, we turn to the matter at hand.

IV.

15

The State, defendant, and the Attorney General seek to find support for their respective positions in this Court's past decisions that have addressed circumstances in which this Court identified a trial court's duty to instruct on an affirmative defense in the absence of any request by the defendant. Chiefly, two cases feature in the arguments made in this appeal.

In Walker, supra, we set forth a standard for a trial court to use when defense counsel requests an affirmative defense, namely that the trial court should provide the requested charge on the affirmative defense when there is a rational basis to do so based on the evidence. 203 N.J. at 86-87 (applying lesser-included offense principles and citing State v. Denofa, 187 N.J. 24, 42 (2006)). However, we further stated that if defense counsel does not request the charge, the court should still give it when the evidence clearly indicates that it is appropriate. Id. at 87. The facts in Walker explain the Court's reason for providing guidance for such sua sponte court instructions on non-requested affirmative defenses.

In Walker, the defendant was charged with multiple crimes, including first-degree murder, stemming from his involvement in a robbery. Id. at 77. While the defendant and another co-defendant carried out the robbery, the victim of the crime was murdered. Id. at 78-79. At trial, the defendant testified that he never intended to rob the victim. Id. at 81. He further

16

stated that he had punched the victim only once in self-defense and then waited for approximately five minutes, while in a state of shock, as his co-defendant beat the victim.  Id. at 80-81. The defendant contended that he never saw a weapon being used and that he ran from the house before the victim was dead.  Id. at 81.  On appeal, we held that it was error for the trial court not to have sua sponte charged the jury on the statutory affirmative defense to felony murder, because there was evidence in the record pertaining to each of the elements of the affirmative defense.  Id. at 89.[3]  Plainly, in the context of a defendant who is arguing on appeal that he should have received the benefit of an affirmative defense that was overlooked at trial, the test of examining for "some evidence" of the elements of the affirmative defense in order to justify the claim of error is appropriate.  See ibid.  That was the proper quantum of proof necessary to justify a claim of error advanced by a defendant who lost the opportunity of benefiting from the affirmative defense.  Ibid.  A different and more complicated calculus pertains when reviewing a trial record for factual

---

[3] That said, we determined in the context of that appeal that the error did not constitute plain error requiring a new trial; the error was not clearly capable of producing an unjust result because the defendant had also been convicted of conspiracy, robbery, reckless manslaughter, and possession of a knife.  Id. at 90-91.  Based on those other convictions, this Court inferred that the jury had "found against defendant on most, if not all, of the four prongs of the [affirmative] defense."  Id. at 90.

17

support for an affirmative defense that defendant did not request and may have actively opposed.

The following year we considered such circumstances in R.T., supra, where the issue was whether a trial judge erred by charging the jury, sua sponte, with a voluntary intoxication instruction over defense counsel's objection. 205 N.J. at 493. Although our Court issued two opinions on the judgment in R.T., four justices concurred in the reasoning of Justice Long's concurrence, which agreed with the Appellate Division's judgment and utilized a clearly indicated standard when examining for the factual presentation of an affirmative defense that was not requested by counsel. Id. at 509. The appeal required a careful, fact-specific analysis, which merits repeating.

The defendant in R.T. was charged with, and convicted of, various sexual assault offenses for abusing his nephew. Id. at 494. During the defendant's initial interview with police, he told detectives that he might have assaulted his nephew, but if he did, it was because he was intoxicated at the time of the assaults. Id. at 495-97. Later at trial, the defendant completely denied assaulting his nephew and claimed that the incriminating statements made to police were a result of coercion. Id. at 499. The defendant's prior inconsistent statements were admitted into evidence, and the court raised whether the jury should be charged on the affirmative defense of

18

intoxication, noting that the record contained evidence about the defendant drinking while possibly committing the assaults. Id. at 501-02. Defense counsel objected, arguing that such a charge would be inconsistent with the defense. Id. at 501-03. The court decided to instruct the jury on the affirmative defense of intoxication over defense counsel's objection. Id. at 505.

On appeal, the defendant challenged the trial court's intoxication instruction, and in a published opinion the Appellate Division reversed and remanded the case for retrial, stating that a charge should be given over a defendant's objection "only where the facts in evidence 'clearly indicate' the appropriateness of that charge." State v. R.T., 411 N.J. Super. 35, 48 (App. Div. 2009). The matter was appealed as of right to this Court based on a dissent by a member of the appellate panel. See R. 2:2-1(a)(2).

A three-justice concurrence allowed to stand the Appellate Division judgment that the intoxication charge was improper and prejudicial, and that it entitled the defendant to a new trial. R.T., supra, 205 N.J. at 514-15 (Long, J., concurring). The concurrence stated that the defendant's references to drinking were vague and too attenuated to the actual crimes, and concluded that the evidence was simply insufficient to support an intoxication affirmative defense. Id. at 513. The Chief

19

Justice concurred in that analysis, but dissented from the Appellate Division judgment that had granted a new trial because he viewed the error as harmless. Id. at 515 (Rabner, C.J., concurring in part, dissenting in part). Two Justices dissented; they agreed with the reasoning of the appellate panel member's dissent, and concluded that the intoxication instruction was neither prejudicial nor improper. Id. at 517 (Rivera-Soto & Hoens, J.J., dissenting).

Thus, although the Court in R.T. was split evenly on the judgment, four justices, or a majority of the Court, agreed with the analysis set forth in Justice Long's concurrence. That opinion highlighted the potential danger of issuing an affirmative defense over defense counsel's objection, and emphasized that "[i]n general . . . an affirmative defense should not be imposed on an unwilling defendant." Id. at 511 (Long, J., concurring). Justice Long's concurrence added that "[i]t goes without saying that a defendant who denies having committed a crime should not be required to acknowledge, either explicitly or inferentially, complicity in the event by way of a compelled affirmative defense." Ibid.

Importantly, the majority in R.T. identified a list of factors for courts to consider when the record contains evidence to support charging the jury on an affirmative defense. Id. at 510. Those factors include "whether counsel is surprised, how

20

the case was tried, whether the defense is incompatible with defendant's position at trial, or whether the instruction would prejudice the defense in some way." Ibid. Although the factors were derived from principles involved in determining whether to charge a jury on lesser-included offenses, R.T. recognized that unlike lesser-included offenses, which have public policy implications,[4] affirmative defenses generally are more problematic because they have, "at their core, the notion that a defendant has indeed committed the interdicted act but that he should be excused from its consequences." Id. at 510-11 (citing State v. Harmon, 104 N.J. 189, 209 (1986)). Ultimately, R.T. cautioned that a trial court's decision whether to charge the jury with an affirmative defense is fact-sensitive, requiring "case-by-case analysis." Id. at 511.

We do not agree with defendant that R.T. and other case law requires that the analysis in this matter begin, and end, with the threshold inquiry of whether the affirmative defense of renunciation was clearly indicated on this record. That approach misstates R.T.'s required nuanced analysis. R.T. contemplated more than a matching of facts to the elements of a

---

[4] See State v. Powell, 84 N.J. 305, 319 (1980) (acknowledging that when record facts "would justify a conviction of a certain charge, the people of this State are entitled to have that charge rendered to the jury, and no one's strategy, or assumed (even real) advantage can take precedence over that public interest").

21

clearly indicated affirmative defense in order to assess whether a trial court's duty to inform and educate jurors in their truth-seeking function has been satisfied. It called for a case-specific analysis. And it did not declare that if a single element of an affirmative defense is not satisfied, the court's duty to educate the jury evaporates.

R.T. did not address how a court should approach a trial narrative that imperfectly, or incompletely, matches an affirmative defense but nonetheless may contain factual strands that a jury might not know how to evaluate unless the court provides an explanation of legal factors that relate those disputed facts to both the elements of the crime and the elements of the affirmative defense. In such situations, it behooves the court, with the participation of trial counsel, to articulate a way for the jury to evaluate the facts as they have been developed through competing presentations. Although, for the most part, a defendant is the master of his defense and a court typically should not interpose a defense against his wishes, a trial court is not limited to the stark choice of giving an affirmative defense charge against a defendant's wishes, or no instruction at all. Legal guidance that bears on a jury's proper assessment of the State's and defense's proofs can be conveyed without resort to the affirmative defense framework.

22

Such an approach is particularly suited for accomplice liability cases, which, courts have been told, require full, accurate, and understandable instruction, regardless of whether defense counsel requests the instruction. See Bielkiewicz, supra, 267 N.J. Super. at 527. Here, the court sought to mold an instruction to do just that, in recognition that the jury could be confused about defendant's statements telling Fairley what to put into his robbery note while asserting that, both before and after, he had scoffed at conducting a robbery and said he wanted nothing to do with it.

Defendant objected to referencing the affirmative defense and offered no alternative. His defense focused on the State's failure to prove that he formed the requisite intent to be an accomplice to the robberies being planned by Fairley. Despite the court making every effort to balance the concerns of both parties, in our view, the jury charge went too far because it explained renunciation in greater detail than was necessary. That created the impression that defendant had to dismantle a strawman argument in order to advance his strategy that he never formed the intent necessary for accomplice liability.

In situations where a criminal trial record presents evidence of an imperfect or incomplete defense, the trial court must consider: (1) the need to educate the jury on how to evaluate evidence from a legal perspective, in keeping with the

23

court's responsibility to administer the justice system and the jury's truth-finding function; and (2) the need to protect a defendant's rights and not undermine the defense that has been advanced at trial.  Although a defendant has a right to choose the defense he will present, the court must be concerned about the countervailing public consideration that all legal concepts necessary for the jury's truth-seeking function are presented to the jury for the proper administration of justice.  A court should assess a number of considerations when not all of the elements of an affirmative defense are present and a defendant resists the affirmative defense because it is asserted to be inconsistent with his chosen defense.

First, the nature and extent of the evidence before the jury must be examined.  Questions such as how close the evidence comes to establishing a defense, and whether the record contains only an isolated reference to the defense's essence or a sustained theory throughout the trial are points to be evaluated.

Second, against the background of how the case was tried, the court must carefully assess the risk of jury confusion, if the jury receives no guidance, in light of the evidence and arguments presented at trial.

Third, the court should evaluate the factors identified in R.T., supra, including whether counsel is surprised, how the

24

case was tried, and whether the potential instruction would be incompatible with defendant's position at trial or would prejudice the defense in some way. 205 N.J. at 510.

Notwithstanding that an affirmative defense is only imperfectly presented in the trial record, the court may conclude that it is appropriate to issue a modified jury charge that instructs the jury on all important legal concepts that relate to liability under the charged crimes.

V.

In this matter, we are compelled to reverse defendant's conviction. The jury instruction given over defendant's objection foisted on defendant an affirmative defense that he did not want and could not meet, as the State and the trial court all realized. In the form in which it was delivered, the instruction unfairly prejudiced defendant's trial strategy. From defendant's perspective, the instruction drew the jury's attention away from his true defense -- that he never intended to conspire or aid or assist in the commission of the crimes.

Certainly, the record presented evidence of an incomplete or imperfect set of facts viewed from the perspective of the affirmative defense of renunciation. The jury heard evidence that could support that defendant was an accomplice: defendant's own statement and co-defendant Fairley's testimony included proof that defendant told Fairley what to include in

25

the robbery note.  But, there was also evidence of an incomplete defense.  According to defendant, he initially told Fairley that the idea of doing a robbery was crazy and repeatedly stated that he did not want anything to do with any robbery Fairley was contemplating.  Fairley's trial testimony supported defendant's assertion; however, Fairley's pretrial statements to detectives undermined it.  The jury heard substantial evidence about defendant's incomplete demonstration of a renunciation defense in Fairley's cross-examination and in the State's opening and closing statements.  In assessing that factual record, the court could reasonably conclude that there was a substantial risk of jury confusion unless the jury was told that "abandonment alone is not enough for acquittal" based on renunciation, provided the jury was satisfied that the State proved that defendant's intent matched Fairley's intent to commit the robberies.  A limited charge to that effect would not have been incompatible with defendant's position at trial, and would have informed the jury.

However, rather than such a streamlined charge, the jury charge contained page after page of transcript that discuss renunciation.  Even though the court emphasized that the State had the burden of proving, beyond a reasonable doubt, each of the elements of the crime, the court also told the jury that defendant had a preponderance-of-the-evidence burden in connection with the State's proofs regarding the strawman

26

argument of renunciation.  That approach was confusing and sent mixed messages to the jury rather than elucidate principles that were pertinent to the evidence.

In sum, because the charge tracked renunciation principles in full, defendant had to combat an unwanted affirmative defense that was inconsistent with his defense.  We conclude that the charge as given prejudiced the defense.  For the reasons expressed, defendant's conviction must be reversed.

## VI.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for further proceedings.


CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

27

SUPREME COURT OF NEW JERSEY

NO.    A-90                              SEPTEMBER TERM 2013

ON CERTIFICATION TO      Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

RAYMOND DANIELS, a/k/a
RAYMOND DANIELSS, TOOKIE
DANIELS, RAYMOND DANIELLS,

        Defendant-Appellant.


DECIDED          February 10, 2016
                 Chief Justice Rabner                    PRESIDING

OPINION BY       Justice LaVecchia

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|-----------|------------|--|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ----------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |