**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3745-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILBER MEJIA-HERNANDEZ,
a/k/a WILBER HERNANDEZ,
WILBER O. MEJIA-HERNANDEZ,
WILBER O. MEJIA HERNANDEZ,
WILBER MEJIA HERNANDEZ,
and WILBER O. HERNANDEZ,

    Defendant-Appellant.

_____

Submitted October 9, 2024 – Decided November 6, 2024

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-02-0189.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Deepa S. Y. Jacobs, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Wilber Mejia-Hernandez appeals from the June 12, 2023, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

The procedural history and underlying facts involved in this matter are set forth at length in our prior unpublished opinion on defendant's direct appeal, in which we affirmed his 2019 convictions and sentence. See State v. Mejia-Hernandez, No. A-1022-19 (App. Div. Aug. 9, 2021), certif. denied, 248 N.J. 554 (2021).

We briefly reiterate the salient facts pertinent to this appeal:

> Following a jury trial, defendant was acquitted of attempted murder, but convicted of aggravated assault, weapons[-]possession[-]related offenses, and hindering apprehension or prosecution. He was sentenced to an aggregate term of fifteen years' imprisonment with a nine-and-one-half-year period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).
>
> The convictions stemmed from defendant's involvement in a shooting at a gentlemen's club. After defendant and two co-workers, co[-]defendants Jose Taveras and Walter Siguencia, were ejected from the club due to an altercation with the staff, they plotted their revenge, switched vehicles, and retrieved a

2

firearm from Taveras'[s] home. They then returned to the club where Taveras fired the gun multiple times into the building, shooting one of the bouncers in the back. Thereafter, Taveras secreted the gun at their place of employment. Although defendant was not the actual shooter, he instigated the conflict at the club, suggested obtaining a gun, served as the driver of the getaway car after the shooting, and assisted in concealing the gun.

[Id. at 1-2.]

During the trial, Taveras testified for the State and implicated defendant who elected not to testify on his own behalf. "During his testimony, Taveras acknowledged pleading guilty to aggravated assault and unlawful possession of a weapon in connection with the incident in exchange for a recommended maximum aggregate sentence of twelve years' imprisonment. Taveras also agreed to testify against his co[-]defendants under the terms of his plea agreement." Id. at 5 n.3.

After the trial, Taveras submitted a sworn affidavit dated December 22, 2020, stating:

I was arrested with my co-defendant[s] . . . on July 16, 2016. I was interviewed by Detective [Michael] Guzman. I was under the influence of marijuana and very nervous[] and I lied about how everything . . . took place that night concerning my [role] and the [role] of my co-defendan[ts]. Also[,] I lied in trial concerning [defendant]. Before the trial[,] I spoke to the [prosecutor,] . . . and she promised me if I testif[ied] against [defendant] that I would get [seven] with 85%[.]

. . . [F]or that reason[,] I lied and said [defendant] told me to take him to the Bronx, NY[,] to get a gun which is not true. I left [the Players] Club and went to my apartment to get the gun and then went back to the Player[s] Club and that[ is] when the shooting happened.

I was drunk the night of the[ incident] and I take full responsibility for my actions. I was not influence[d] by anybody to write this confession[.] I feel bad that I lied and my conscience is bothering me and I just want to come clean and tell the truth.

On February 22, 2022, defendant filed a timely PCR petition, which was later supplemented by assigned counsel. In the petition, defendant raised various claims of ineffective assistance of counsel (IAC) by his trial attorney. Among other things, defendant asserted his trial counsel was ineffective by improperly advising him about his right to testify and pressuring him not to testify. He also alleged trial counsel should have filed a motion for a new trial based on Taveras's post-trial affidavit.

Following oral argument, the PCR judge rejected each of defendant's claims in a comprehensive twenty-eight-page written decision. In his decision, the judge reviewed the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie claim of IAC. The judge also determined defendant was not entitled to an evidentiary hearing. The judge entered a memorializing order, and this appeal followed.

4

On appeal, defendant raises the following point for our consideration:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS.
>
> A. Trial Counsel Abridged Defendant's Constitutional Right to Testify.
>
> B. Trial Counsel Failed to Move for a New Trial Based Upon the Newly Discovered Evidence of Jose Taveras's Recantation.

We begin by setting out some guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo." State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010). "[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citation omitted). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

5

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). "To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

To establish a prima facie IAC claim, a defendant must demonstrate "by a preponderance of the credible evidence," State v. Echols, 199 N.J. 344, 357 (2009), that the performance of defendant's attorney fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's

A-3745-22

performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To satisfy the prejudice prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

A-3745-22

Failure to meet either prong of the two-pronged <u>Strickland</u>/<u>Fritz</u> test results in the denial of a petition for PCR. <u>State v. Parker</u>, 212 N.J. 269, 280 (2012) (citing <u>Echols</u>, 199 N.J. at 358). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012) (citation omitted) (citing <u>Strickland</u>, 466 U.S. at 697).

Applying these principles, we reject defendant's contentions that he received IAC substantially for the reasons stated in the judge's thoughtful written decision. In rejecting defendant's IAC claim in connection with his election not to testify at trial, the judge explained:

> First, . . . defendant argues that trial counsel rendered [IAC] because he failed to prepare him to testify at trial, failed to explain to him what would happen if he did testify, failed to explain to . . . defendant that the decision to testify or to remain silent was his alone to make, and that trial counsel pressured him into not testifying at trial. However, the record is devoid of specific facts indicating that trial counsel's performance amounted to a constitutional violation. Specifically, there are no facts outside the trial record that support . . . defendant's claims that he was denied effective assistance of counsel. The State correctly points out that during trial, the [c]ourt asked . . . defendant if he had the opportunity to speak with his attorney about whether he would testify at trial, as well as whether . . . defendant had enough time to speak with

8

his attorney to which . . . defendant stated he did. The State also correctly points out that . . . defendant was extensively questioned about his decision not to testify, and he made the final decision.

The [c]ourt agrees with the State that . . . defendant was given enough time to speak with his attorney and decide whether he would testify at trial. The court properly questioned . . . defendant about his decision not to testify. The court agrees that . . . defendant's decision not to testify at trial was a strategic decision made by trial counsel and . . . defendant himself.

[(Citations omitted).]

"The decision of a defendant in a criminal case as to whether or not to testify rests ultimately with [the] defendant and is an important strategic or tactical decision to be made by a defendant with the advi[c]e of . . . counsel." State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988). We acknowledge that "it is the responsibility of a defendant's counsel, not the trial court, to advise [the] defendant on whether or not to testify and to explain the tactical advantages or disadvantages of doing so or not doing so." State v. Savage, 120 N.J. 594, 630-31 (1990) (quoting Bogus, 223 N.J. Super. at 423). However, "[t]o ensure that counsel meets that obligation, it may be the better practice for a trial court to inquire of counsel whether [counsel] had advised a defendant" of the right to

testify. Id. at 631. "Indeed, counsel's failure to do so will give rise to a claim" of IAC. Ibid.

As the judge recounted, defendant was extensively questioned on the record under oath about his decision not to testify. Defendant was asked whether he had consulted with his attorney in making his decision, whether he was advised of the consequences of his decision, and whether he understood that the decision was his to make. Defendant responded affirmatively to the questions. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Ultimately, by his own admission, defendant knowingly, voluntarily, and intelligently elected not to testify without threats, coercion, or pressure from anyone. Because the record belies defendant's claims to the contrary, we are satisfied defendant failed to show constitutionally deficient performance on the part of his attorney to establish the first prong of the Strickland/Fritz test. Indeed, defendant's election not to testify "was a tactical decision and defendant must bear the consequences of it." Bogus, 223 N.J. Super. at 423.

Turning to defendant's claim that his attorney was ineffective by not filing a motion for a new trial based on newly discovered evidence, namely, Taveras's post-trial affidavit, the judge reasoned that defendant's allegation that "Taveras

was intoxicated during his interviews with the State is contradicted by evidence that . . . Taveras was sober and coherent during his interviews."  The judge expounded:

> The [c]ourt agrees with the State that there was no indication that . . . Taveras had any access to drugs or alcohol or that he was under the influence [during his interviews with the State].  The court further agrees with the State that at the time . . . Taveras testified before the court, he was coherent and sober.  Therefore, there was no basis for trial counsel to move for a new trial.

In his rationale, the judge implicitly rejected the believability of Taveras's recantation.

"It is not [IAC] for defense counsel not to file a meritless motion[.]"  State v. O'Neal, 190 N.J. 601, 619 (2007).  New Jersey courts follow the Carter[1] test to determine whether a motion for a new trial on the basis of newly discovered evidence is meritorious:

> Evidence is newly discovered and sufficient to warrant the grant of a new trial when it is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."

---

[1]  State v. Carter, 85 N.J. 300 (1981).

[State v. Nash, 212 N.J. 518, 549 (2013) (quoting Carter, 85 N.J. at 314).]

"The absence of any one of these elements warrants denial of the motion." State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008).

"[R]ecantation testimony" is "generally regarded as 'suspect and untrustworthy.'" State v. Ways, 180 N.J. 171, 196-97 (2004) (quoting State v. Carter, 69 N.J. 420, 427 (1976)). "Consequently, the burden of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." Carter, 69 N.J. at 427. The test is whether the recantation testimony "casts serious doubt upon the truth of the testimony given at the trial and whether, if believable, the factual recital of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there resulted a possible miscarriage of justice." State v. Puchalski, 45 N.J. 97, 107-08 (1965).

We have remanded cases for an evidentiary hearing where an affidavit actually exculpates the defendant. See, e.g., Allen, 398 N.J. Super. at 250-52, 258-59 (remanding where a witness who did not testify at trial prepared an affidavit and gave an interview to a defense investigator identifying another person as the murderer); State v. Robinson, 253 N.J. Super. 346, 359-61, 367 (App. Div. 1992) (noting that it was proper for the judge to hold an evidentiary

A-3745-22

hearing where a co-defendant who was jointly tried and did not testify at trial later swore that the defendant "'[did not]' participate in the robbery").

However, here, even if the recantation is believed, the affidavit does not satisfy the Carter test because it does not exonerate defendant of accomplice liability. See State v. Ramirez, 246 N.J. 61, 67 (2021) ("Although there are three types of accomplice liability under N.J.S.A. 2C:2-6(c)(1), all three require the accomplice to act or fail to act '[w]ith the purpose of promoting or facilitating the commission of the offense.'" (emphasis omitted) (quoting N.J.S.A. 2C:2-6(c)(1))); State v. Daniels, 224 N.J. 168, 179 (2016) ("Under accomplice liability, the accomplice is 'guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal.'" (quoting State v. Whitaker, 200 N.J. 444, 458 (2009))).

Critically, the affidavit only specifically refuted the claim that defendant had asked Taveras to take defendant to the Bronx to get a gun. The affidavit did not repudiate the fact that defendant accompanied Taveras and Siguencia on Taveras's trip to get a gun for which none of the men had a permit, that defendant agreed to accompany both men back to the club knowing that Taveras was armed and intended to commit an offense, and that defendant remained in the getaway vehicle while the shooting occurred. At no point did defendant attempt to leave

13

or renounce the planned crime. See Daniels, 224 N.J. at 179-80 ("[U]nder the defense of renunciation, an actor is not guilty of accomplice liability if he proves, by a preponderance of the evidence, that he abandoned his efforts to commit the crime or otherwise prevented its commission." (citing N.J.S.A. 2C:2–6(e)(3))). Because a motion for a new trial would not have been successful, defendant's attorney was not constitutionally ineffective for not filing the motion and defendant was not prejudiced by the omission.[2] Accordingly, the judge did not abuse his discretion in denying defendant an evidentiary hearing or PCR.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Although the record is unclear, we presume counsel was aware of the recantation and able to file the motion.