**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4919-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDDIE MARTIN, a/k/a JUDY
MARTIN and EDWARD MARTIN,

    Defendant-Appellant.

_____

Submitted August 1, 2017 — Decided August 9, 2017

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-05-0838.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Jeffery St. John, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Eddie Martin appeals from his convictions of burglary and theft, and possession of burglar's tools following a jury trial. After a review of his contentions in light of the record and applicable legal principles, we affirm.

The facts as presented at trial can be summarized as follows. A witness testified that, as he was standing in the parking lot where he worked, he observed a man, identified as defendant, moving among the parked cars, "trying to open car doors" and "break into" the vehicles. The witness called 9-1-1 and described defendant as a black male wearing a face mask and a gray hoodie with a light jacket over it.

Asbury Park Police Officer Michael Boone responded to the 9-1-1 call. When he arrived at the parking lot, he observed defendant crouching down between the parked vehicles. He described defendant as wearing gray pants, a gray jacket and hat, and he was carrying a white bag. Boone decided to detain defendant by placing him in the patrol car while waiting for additional officers, and as he patted him down, he found a screwdriver in defendant's pocket.

Upon his inspection of the parking lot, Boone found a black car with a smashed window. The owner of the car was located, and after looking inside her vehicle, she reported that she was missing a white jacket, several bracelets, sunglasses, and a necklace.

The white jacket was found in the bag that defendant was carrying, and the victim observed that the jacket had bloodstains on it. Her necklace and sunglasses, as well as several other items, were found in the back of the patrol car after defendant was asked to step out and placed under arrest.

Another owner of a car in the parking lot reported that the soft top to her Jeep had been partially removed, there was damage to the inside of her car, and bloodstains on the seat.

Police Office Lemar Whittaker also responded to the 9-1-1 dispatch. When he arrived on the scene, he observed defendant sitting in the back of the patrol car wearing a light gray jacket, gray hoodie and a gray hat. Boone showed him the white bag containing the white jacket.

Whittaker testified that after defendant was arrested, he found various items of jewelry on the floor of the patrol car and stuffed between the seats where defendant had been sitting, including the necklace and sunglasses later identified by the victim as hers.

After noticing that there were surveillance cameras on the building pointed toward the parking lot, Whittaker asked to view the recordings. He testified that the surveillance showed a "subject fitting the description of [defendant] in the area of the

vehicles, [walking] up toward the camera holding a white bag . . . . It appeared to be the same plastic bag that we had."

Although both officers testified that their patrol cars were equipped with motor vehicle recording cameras (MVR), they did not retain the recording.[1] Whittaker also stated that they did not recover a face mask at the scene.

Officer Thomas Gogan was responsible for transporting defendant to the police station after his arrest and processing him. He described defendant as wearing a gray winter hat, a black and gray coat with a gray hoody underneath and gray sweatpants. When defendant removed his outer clothing, a blue piece of glass fell out of his hood; the officer identified it as a piece of motor vehicle window glass. Defendant also had two bracelets and a ring in his possession. Gogan noticed that there was blood on defendant's hand, which he photographed.

Defendant was convicted of several burglary and theft charges, as well as disorderly persons possession of burglar's tools. He was sentenced to an aggregate term of five years imprisonment with a two-and-one-half year period of parole ineligibility for the burglary conviction.

---

[1] Whittaker testified that his MVR would not have contained any footage as it was only activated by the use of the emergency lights. He did not turn on his emergency lights as he responded to the scene.

On appeal, defendant presents the following issues:

POINT I: THE OFFICERS' LAY TESTIMONY THAT MARTIN MATCHED THE DESCRIPTION OF THE SUSPECT VIOLATED STATE V. MCLEAN, 205 N.J. 438 (2011). (Not Raised Below).

POINT II: FAILURE TO CHARGE THE ADVERSE INFERENCE AND THIRD PARTY GUILT INSTRUCTIONS, REQUESTED BY DEFENSE, DENIED MARTIN DUE PROCESS AND A FAIR TRIAL.

> A. Because Failure to Turn Over the MVR Recordings was a Discovery Violation, the Court Erred in Denying Defendant's Request for an Adverse Inference Charge.

> B. Because the Defendant's Theory of the Case was that a Third Person Committed the Burglaries, and Because this Theory was Supported by the Record, the Court Erred in Denying the Requested Third-Party Guilt Instruction.

POINT III: FAILURE TO CHARGE THE LESSER-INCLUDED OFFENSE OF CRIMINAL TRESPASS, SUPPORTED BY THE EVIDENCE AT TRIAL, REQUIRES REVERSAL. (Not Raised Below).

POINT IV: THE DENIAL OF MARTIN'S REASONABLE REQUEST FOR AN ADJOURNMENT DENIED HIM DUE PROCESS AND A FAIR TRIAL.

POINT V: THE CUMULATIVE IMPACT OF THE ERRORS DENIED MARTIN DUE PROCESS AND A FAIR TRIAL (Not Raised Below).

POINT VI: IMPOSITION OF THE MAXIMUM SENTENCE WAS MANIFESTLY EXCESSIVE, REQUIRING A REMAND FOR RESENTENCING.

During the trial, Officer Whittaker presented the following testimony:

Q: And when you proceeded to that location, what happened when you got there?

A: I met with Officer Boone who's already on location. He stated to me that he had a subject fitting the description detained in his vehicle.

Q: And were you able to observe that subject?

. . . .

A: He fit the description. He had a light gray jacket, the gray hoody underneath and a gray hat.

. . . .

Q: And what if anything did that surveillance show?

A: It showed a subject fitting the description of Mr. Martin in the area of the vehicles, and also walk up towards the camera holding a white bag that said "thank you" on it. It appeared to be the same plastic bag that we had.

. . . .

Q: Officer, can you describe to us what we're seeing [in the surveillance tape].

A: You're seeing the subject fitting the description of what was given out by dispatch walking in the parking lot where the Jeep was carrying a white plastic bag, seemingly to peer in the windows.

Q: And, officer, was that subject wearing the same outfit as the subject in the patrol car?

6

A:  Yes.

Defendant argues that this testimony exceeded the limits of the lay testimony that police officers may present and violated the precepts established in State v. McLean, 205 N.J. 438 (2011). He contends that the officer improperly opined that defendant matched the burglary suspect's description.

As there was no objection to the line of testimony during trial, our review is under the plain error standard. R. 2:10-2. We reverse only if the error was "clearly capable of producing an unjust result." State v. Miller, 205 N.J. 109, 126 (2011) (quoting R. 2:10-2; State v. Walker, 203 N.J. 73, 89-90 (2010)).

Whittaker was presented as a lay witness. Therefore, his testimony was governed by N.J.R.E. 701; it must be based on the witness' perception and assist the jury in performing its function. "[P]erception . . . rests on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." McLean, supra, 205 N.J. at 457 (citing State v. Labrutto, 114 N.J. 187, 199-200 (1989) ("permitting lay opinion based on observation")).

In McLean, our Supreme Court reiterated that a police officer is "permitted to set forth what he or she has perceived through one or more of the senses," id. at 460 (citations omitted), and

describe for the jury what the officer saw and did. The officer may not opine as to what he or she "believed," "thought," or "suspected" but may provide a recitation of facts of which he or she has first-hand knowledge. Ibid.

Here, Whittaker was not giving an opinion as to defendant's guilt. He was asked questions regarding the physical characteristics and clothing worn by the possible suspect; he described the man and the clothing he had seen in person and on the surveillance tapes, and advised that it was similar to the description of the suspect and his attire provided by the 9-1-1 caller. The officer's testimony as to why he approached defendant was properly part of his factual recitation. He did not testify or otherwise suggest that defendant was the man who had broken into the vehicles and taken the victim's property, which would have been improper lay testimony.

During the charge conference, defense counsel requested that the court issue an adverse inference charge for the officers' failure to maintain the MVRs as evidence. Counsel conceded the recordings had not been requested during discovery.

The judge declined the request, stating that defendant had never requested that the MVRs be preserved as evidence, and there were no proofs that the MVRs were running at the time of these events.

Defendant relies on State v. Dabas, 215 N.J. 114 (2013) to support his argument that the trial judge abused his discretion in his decision not to issue the adverse inference charge. We do not find Dabas to be instructive to the circumstances here. In Dabas, the State's investigator took copious notes during a two-hour pre-interview. Id. at 123. Thereafter, a fifteen minute recorded statement was taken from Dabas. Id. at 124. In the inquiry, the investigator primarily used leading questions based on the defendant's pre-interview answers memorialized in the investigator's handwritten notes. Ibid. He subsequently prepared a typewritten final report that he used during his trial testimony. Id. at 123. The investigator advised that he had destroyed his handwritten notes a year after defendant's indictment. Ibid. The trial judge denied defendant's request to issue an adverse inference charge. Id. at 127.

The Court found the prosecutor violated the rule governing discovery, Rule 3:13-3(b), in not providing the pre-interview notes to the defense after the indictment and in the notes' destruction thereafter. Id. at 138. The Court stated that an adverse inference charge was a permissible remedy for a discovery violation, and under the circumstances of Dabas, it was an abuse of discretion for the judge not to have given the charge. Id. at 141.

A-4919-15T3

We are without doubt that an MVR is subject to discovery. R. 3:13-3(b)(1)(A) (stating that discovery shall include video and sound recordings). In this instance, however, defendant never requested that the State ensure the preservation of any recordings that might exist. It is undisputed that the issue was never raised until the conclusion of the trial during the charge conference. If defendant wished to assert a violation of the discovery rules, he needed to do so in a more timely manner so that the court could address the issue and determine the appropriate sanction, whether it be a directive to produce the recordings or a more severe measure.

There were insufficient proofs presented here that recordings existed and that they would yield any relevant information. And, unlike Dabas, there were no proofs that the State or the police officers acted intentionally or purposefully in their failure to preserve the MVRs. We are satisfied, for all of the stated reasons, that the trial judge did not abuse his discretion in declining to charge an adverse inference instruction.

We also find meritless defendant's argument that the trial judge erred in denying his request to give a third-party guilt jury instruction. Defense counsel supported the request by arguing that defendant did not match the description given by the 9-1-1

caller and that there was sufficient evidence presented that a third person had committed the burglaries.

In declining the defense request, the judge stated that counsel could argue to the jury that someone else committed the crimes and that the State had not met its proofs as to defendant's guilt. He further noted that the identification charge he intended to use contained similar language to that of third-party guilt. That charge on identification instructs the jury that the "burden of proving the identity of the person who committed the crime is upon the State." Model Jury Charges (Criminal), "Identification: In-Court And Out-of-Court Identifications" (effective Sept. 4, 2012). The charge reinforces the tenet that the defendant does not have the burden to show that the crimes were committed by someone else.

An accused has a constitutional right under the due process clause of the Fourteenth Amendment to offer evidence of third-party guilt. See Chambers v. Miss., 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); State v. Koedatich, 112 N.J. 225, 297 (1988) (citations omitted). Defendant does not argue that he was deprived of this opportunity during the trial; he contends, rather, that the judge should have issued a charge to the jury on third-party guilt. We disagree.

As an affirmative defense, the trial court is only required to instruct the jury on the defense of third-party guilt where there is a "rational basis" to do so based on the evidence. State v. Walker, 203 N.J. 73, 87 (2010). Here, there was no evidence presented as to a third party. A description of a man trying to break into cars in a parking lot was provided by a 9-1-1 caller. The police arrived on the scene and encountered only defendant. The officers provided a description of defendant and his clothing. Defendant had in his possession the white bag that was being carried by the individual in the video surveillance of the parking lot. The victim's stolen items were found in the bag and on defendant's person.

Defense counsel argued to the jury in her summation the inconsistencies in the testimony presented by the State and the mistakes that the police made in their investigation and identification of defendant. It remained the province of the jury to determine whether defendant was the person who had committed the alleged crimes. The court did not abuse its discretion in not issuing the third-party guilt charge.

We turn to defendant's argument that the trial court erred in not charging the jury sua sponte with the lesser included-offense of criminal trespass. The obligation to instruct the jury on lesser-included offenses arises "only if counsel requests such

a charge and there is a rational basis in the record for doing so or, in the absence of a request, if the record <u>clearly indicates</u> a charge is warranted." <u>State v. Denofa</u>, 187 <u>N.J.</u> 24, 42 (2006) (second emphasis added) (citations omitted). To be warranted, "the facts adduced at trial [must] clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." <u>State v. Jenkins</u>, 178 <u>N.J.</u> 347, 361 (2004). And, for the record to clearly indicate a lesser-included charge is warranted, the evidence must be "jumping off the page." <u>Denofa</u>, <u>supra</u>, 187 <u>N.J.</u> at 42.

Burglary requires that a person without authority enter a structure with the intent to commit an offense. <u>N.J.S.A.</u> 2C:18-2(a)(1). Criminal trespass does not require that the person have an intent to commit a crime. <u>N.J.S.A.</u> 2C:18-3(a). If a factual dispute exists as to whether the defendant had a purpose to commit an offense, trespass should be charged. <u>See</u> <u>State v. Singleton</u>, 290 <u>N.J. Super.</u> 336, 341-342 (App. Div. 1996).

There were no facts presented to the jury that defendant broke into the victim's car for any purpose other than to steal items from it. Defendant has not demonstrated that the failure of the judge to charge criminal trespass sua sponte was "clearly capable of producing an unjust result." <u>R.</u> 2:10-2.

Just prior to jury selection, defendant requested an adjournment. His counsel stated that defendant had been struck in the face and his eye was swollen and partially closed. Counsel stated: "His face is disfigured and he's not comfortable going forward today." In denying the request, the judge noted that defendant had been in jail on these charges for over a year. The court had blocked off the week for this particular trial and advised that due to scheduling, the matter would not be reached, if adjourned, until at least the fall.[2] The judge stated: "So for his protection, to have him have his day in court in a reasonable period of time, I'm going to move forward." He also noted that he had not noticed the injury to defendant's eye until advised of it. He said that unless it had been pointed out to him he would not have seen it as defendant was dark-skinned. The judge believed that the jury might not notice the injury either if it was not pointed out to them. Nevertheless, the judge offered to give a curative instruction to the jury which defendant accepted.

We review a motion for an adjournment under a deferential standard. State v. Miller, 216 N.J. 40, 65 (2013). Whether to grant a trial adjournment rests within the sound discretion of the trial court. State v. Smith, 87 N.J. Super. 98, 105 (App. Div.

_____

[2] The trial began on February 2.

1965).  We see no abuse of discretion.  The judge explained that the trial had been scheduled for that particular week, defendant had been in jail for over a year and if the matter were adjourned, it would not be reached again for another eight months or perhaps longer.  This rational explanation supported the court's decision. Furthermore, the judge advised the jury that defendant had been in an accident the day before in which he had sustained injury to his eye.  He instructed: "[Y]ou are not to utilize that injury in any way in determining the verdicts in this case."

We briefly address defendant's contention that his sentence was excessive.  Our review of sentencing determinations is limited, and is governed by the "clear abuse of discretion" standard.  State v. Miller, 205 N.J. 109, 127 (2011); State v. Roth, 95 N.J. 334, 363 (1984).  We are bound to uphold the trial court's sentence, even if we would have reached a different result, unless "(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found . . . were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts . . . makes the sentence clearly unreasonable so as to shock the judicial conscience."  State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting Roth, supra, 95 N.J. at 364-65); see also State v. Bieniek, 200 N.J. 601, 608 (2010); State v. O'Donnell, 117 N.J. 210, 215-16 (1989).

We discern no abuse of discretion in the imposed sentence. Defendant acknowledged his lengthy criminal history and the leniency he had been accorded in the past. These offenses had been committed within months of his release from prison on burglary convictions. The judge properly explained his weighing of the aggravating and mitigating factors, and the sentence was within the guidelines.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16