# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0010-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TAHIR S. GREGORY,
a/k/a TAHIR NELSON,
TAHIR S. SAHKOOR,
TAHIR GREGORY,
TAMIR SHAKUR, and
KAREEM GREGORY,

    Defendant-Appellant.

_____

        Argued March 11, 2026 – Decided June 4, 2026

        Before Judges Gummer, Vanek, and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 22-08-1265.

        Rachel E. Leslie, Assistant Deputy Public Defender, argued the cause for the appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel E. Leslie, of counsel and on the briefs).

Kristen N. Pulkstenis, Assistant Prosecutor, argued the cause for the respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Kristen N. Pulkstenis, of counsel and on the brief).

Appellant filed a self-represented supplemental brief.

PER CURIAM

Defendant appeals his convictions, entered after a jury trial, for two counts of human trafficking and two counts of promoting prostitution. Because the record does not permit us to discern which statutory subsection formed the basis for the jury's verdict, we vacate the human-trafficking convictions. We affirm defendant's convictions and sentence on both counts of promoting prostitution and remand the human trafficking charges for a new trial.

I.

The charges against defendant arose after Atlantic City police responded to a June 29, 2017 report of a woman's fatal drug overdose. At the scene, police encountered defendant. Their investigation into the death resulted in presentment of charges to a grand jury relating to two other women, Alice and Ella,[1] whom police believed defendant had coerced into prostitution.

---

[1] We use pseudonyms to maintain the confidentiality of sealed records, R. 1:38-11, and to protect the privacy of victims, R. 1:38-3(c)(12).

In August 2022, an Atlantic County grand jury returned a superseding indictment charging defendant with first-degree human trafficking, N.J.S.A. 2C:13-8(a)(1) or -8(a)(2) (counts one and three); third-degree promoting prostitution, N.J.S.A. 2C:34-1(b)(2) (counts two and four); first-degree strict liability drug-induced death, N.J.S.A. 2C:35-9(a) (count five); third-degree controlled dangerous substance (CDS) possession, N.J.S.A. 2C:35-10(a)(1) (count six); third-degree CDS distribution, N.J.S.A. 2C:35-5(a)(1) (count seven); first-degree witness tampering by obstructing official proceeding, N.J.S.A. 2C:28-5(a)(5) (count eight); second-degree witness tampering by obstructing official proceeding, N.J.S.A. 2C:5-2(a)(2) and 2C:28-5(a)(5) (count nine); first-degree witness tampering by withholding testimony or information, N.J.S.A. 2C:28-5(a)(2) (count ten); third-degree witness tampering by withholding testimony or information, N.J.S.A. 2C:28-5(a)(2) (count eleven); and third-degree witness tampering by causing false testimony, N.J.S.A. 2C:28-5(a)(1) (count twelve).

In a May 2022 pretrial proceeding, the court granted defendant's motion to represent himself, engaging in the following colloquy:

> THE COURT: I know you want to proceed [self-represented], and I know you feel confident that you can cross[-]examine the witnesses. I'm going to discuss that with you. But is it something that you want to

represent yourself, or are you just not comfortable with [defense counsel]?

[DEFENDANT]:  The best way I can win my case is me representing myself.

THE COURT:  Okay.  So you're not looking to get another attorney, you just don't want to have any attorney?

[DEFENDANT]:  He can be --

THE COURT:  Standby?

[DEFENDANT]:  -- standby.

The court granted defendant's motion, appointing standby counsel with the following limitations:  (1) standby counsel is "not going to be sitting up at counsel table"; (2) is "not going to have . . . all the discovery"; (3) is "not going to be able to subpoena witnesses for you"; and (4) is "not going to be able to go over anything with you or talk to you about the law or legal issues."

In December 2022, the court granted defendant's motion to sever the wrongful-death count, CDS charges, and all but one of the witness-tampering counts (counts five through eleven) from the human-trafficking and promoting-prostitution charges (counts one through four and twelve).

Trial was held in January 2023.  The State's theory was that defendant had forced Alice and Ella to prostitute themselves using physical violence,

4

intimidation, drug dependency, and destruction of identifying documents. Both women testified, describing ongoing abuse and coercion over months.

Alice testified that while she was homeless and struggling with opiate and cocaine addictions, she and Ella had become involved with defendant. In July 2016, they agreed to work for him in exchange for drugs. Alice explained she and Ella had engaged in sexual intercourse with men whom defendant solicited through online advertisements and men they encountered while "walk[ing] the streets." Both women were required to hand over all the money they earned to defendant. Alice further described that if they did something defendant disliked, he would threaten them physically and sometimes act violently, including an incident where defendant blackened her eye.

Ella testified she was involved with defendant for approximately a year, describing experiences similar to Alice's. She left him several times, but defendant would persistently text, call, and "manipulate" her into returning. Defendant threatened her, took her money, and at times pretended to be a client to lure her back. Text messages admitted in evidence at trial documented conversations between Ella and defendant about clients paying her and urging her to "just come back."

5

Additionally, defendant posted advertisements for both women on a website called "Backpage." Detectives confirmed these ads were created using defendant's email address and telephone number. At trial, three detectives and an officer testified for the State. Detective Gregory Engstler testified that in December 2016, officers from the Atlantic City Police Department had reached out to him regarding a pimp named Tahir Gregory, prompting an investigation into promoting prostitution and drug activity. Detective Engstler was asked to define the word "pimp." The following colloquy occurred without objection:

> [Prosecutor]: And you mentioned the word pimp. What do you mean by that?
>
> [Engstler]: A pimp? A pimp, also a human trafficker, it's literally someone who sells another human being.
>
> . . . .
>
> . . . Human trafficking, as the way I investigate it, is selling other human beings, introducing them into the commercial sex industry and forcing them to work as a prostitute.
>
> [Prosecutor]: Okay. During this time frame, 2016-2017, how . . . was business being conducted at that point?
>
> [Engstler]: At that point, it was primarily one internet site -- it was called Backpage.com -- that if you wanted an escort you would go on there and, for the most part, they would come to you.

6

A-0010-23

Backpage.com was set up like Craigslist, almost, if you're familiar with that. It was an online market place where it actually had categories where you could buy a lawnmower or a used car.

But there were no lawnmowers or used cars for sale on [Backpage]. It was all escort ads.

At any one time, if you looked in the Atlantic City area, there would be hundreds of prostitutes posted on there and a phone number.

You could text them, call them, they would come to your casino hotel room.

[Prosecutor]: During this time of 2016-2017 when you were conducting investigations, did you learn of any techniques that were being used at the time to control prostitutes better?

[Engstler]: Yeah. The pimps are very manipulative -- the techniques they use to control people.

They prey on people with vulnerabilities. They provide -- you know, it seemed like they were providing basic needs. Shelter, love, like a family, almost.

And then they'll . . . control them through physical force, threats of force, whether it's direct or implied. Frequently they'll use somebody's drug addiction and exploit that by supplying them with drugs to control them.

When they're . . . using Backpage.com, or any other internet site, and they're communicating by text message -- I've seen a lot of times where the pimp will actually answer the text messages so that the . . . customer on the other end might think they're speaking

A-0010-23

with the escort they see in the picture, and it's really the pimp on the other end and that's just a way of controlling.

In its preliminary instructions and final charge to the jury, the court read the pertinent counts of the indictment. The two human-trafficking counts were nearly identical, listing slightly different time periods. Count one pertained to Alice; count three pertained to Ella. Count one read as follows:

> Tahir S[.] Gregory did receive all monetary proceeds from participation as an organizer, supervisor, financier, or manager in a scheme or course of conduct which violates 2C:13-8(a)(1) <u>or</u> knowingly hold, recruit, lure, entice, harbor, <u>and/or</u> transport [Alice] to engage in prostitution, specifically through threats of serious bodily harm, confiscation of [Alice]'s identifying documents, <u>and/or</u> facilitating access to heroin; contrary to the provisions of N.J.S.A. 2C:13-8(a)(2), against the peace of this state, the Government and dignity of the same.
>
> [(Emphases added).]

Count three contained the same allegations as applied to Ella but omitted the language regarding confiscation of identifying documents.

As the State acknowledges in its brief, the court, in its final charge to the jury, recited the model charge only as to (a)(1), as no model charge for (a)(2) exists. The verdict sheet combined alleged violations of N.J.S.A. 2C:13-8(a)(1)

and (a)(2) into a single paragraph containing all elements of both statutes. As to count one, the verdict sheet read:

> HUMAN TRAFFICKING: TO ENGAGE IN SEXUAL ACTIVITY AND/OR PROVIDE LABOR OR SERVICES
>
> (N.J.S.A. 2C:13-8[(a)](l))
>
> On diverse dates between the 5th day of July, 2016 and August 23, 2016[,] in the City of Atlantic City, County of Atlantic, and within the jurisdiction of this [c]ourt, Tahir S[.] Gregory did receive all monetary proceeds from participation as an organizer, supervisor, financier, or manager in a scheme or course of conduct which violated [N.J.S.A.] 2C:13-8([a])(l) or knowingly holding, recruit, lure, entice, harbor and/or transport [Alice] to engage in prostitution, specifically th[r]ough threats of serious bodily harm, confiscation of [Alice]'s identifying documents, and/or facilitating access to heroin, contrary to law, against the peace of the State, the Government and dignity of the same.
>
> How do you find the Defendant[?]:
> Not Guilty[/]Guilty
>
> [(Emphases added).]

As to count three, the verdict sheet read:

> HUMAN TRAFFICKING: TO ENGAGE IN SEXUAL ACTIVITY AND/OR PROVIDE LABOR OR SERVICES
>
> (N.J.S.A. 2C:13-8[(a)](l))
>
> On diverse dates between 5th day of July, 2016 and July 12, 2017[,] in the City of Atlantic City, County of Atlantic, and within the jurisdiction of this [c]ourt,

9

Tahir S[.] Gregory did receive all monetary proceeds from participation as an organizer, supervisor, financier, or manager in a scheme or course of conduct which violated [N.J.S.A.] 2C:13-8([a])(l) <u>or</u> knowingly holding, recruit, lure, entice, harbor <u>and/or</u> transport [Ella] to engage in prostitution, specifically th[r]ough threats of serious bodily harm, <u>and/or</u> facilitating access to heroin, contrary to law, against the peace of the State, the Government and dignity of the same.

How do you find the Defendant [?]:
Not Guilty[/]Guilty

[(Emphases added).]

The court did not specifically inform the jury unanimity was required as to either (a)(1) or (a)(2) individually. The jury convicted defendant of two counts of human trafficking and two counts of promoting prostitution but acquitted him of witness tampering.

At sentencing in April 2023, the court interpreted the jury's verdict to pertain to subsection (a)(2) and sentenced defendant to two consecutive thirty-year terms with twenty-year periods of parole ineligibility on the human trafficking charges, and concurrent five-year terms on the promoting prostitution charges. The court assessed fines and penalties as well as $7,000 in restitution for each victim. Defendant later pleaded guilty to the severed drug-induced death count, receiving a concurrent seven-year sentence.

On appeal, defendant raises the following arguments:

POINT I

[DEFENDANT]'S HUMAN TRAFFICKING CONVICTIONS MUST BE REVERSED BECAUSE THE STRUCTURE OF THE INDICTMENT, JURY INSTRUCTION, AND VERDICT SHEET MAKE IT IMPOSSIBLE TO KNOW WHETHER THE JURY REACHED A UNANIMOUS VERDICT ON COUNTS [ONE] AND [THREE.]  (Partially Raised Below).

    1. It is impossible to tell whether the jury reached a unanimous verdict on [c]ounts [one] and [three].

    2. If the jury convicted [defendant] of violating (a)(1), the jury also needed to unanimously agree on which subsections were violated.

POINT II

[DEFENDANT]'S HUMAN TRAFFICKING CONVICTIONS MUST BE REVERSED BECAUSE THE JURY WAS NOT INSTRUCTED ON THE MEANING OF ORGANIZER, SUPERVISOR, FINANCIER, OR MANAGER, AN ESSENTIAL ELEMENT OF THE OFFENSE.  (Not Raised Below).

POINT III

THE TRIAL COURT SEVERELY MISHANDLED [DEFENDANT]'S MOTION TO REPRESENT HIMSELF.

    1. By its failure to appreciate that [defendant]'s relationship with trial counsel had suffered a complete and irreparable breakdown, evidenced by trial

11

counsel's active opposition to his own client's motions, the trial court left [defendant] with a false choice between representing himself or proceeding to trial with a conflicted attorney.

2. The court abused its discretion when it informed [defendant] that standby counsel could not sit at counsel table, review the discovery, help to subpoena witnesses, or talk to [defendant] about "the law or legal issues."

POINT IV

TWO DETECTIVES OFFERED PREJUDICIAL TESTIMONY THAT VIOLATED MULTIPLE RULES OF EVIDENCE AND [DEFENDANT]'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM, ENTITLING HIM TO A NEW TRIAL.  (Not Raised Below).

1. The testimony of Detectives Engstler and Southard violated [State v.]Branch, [182 N.J. 338 (2005)]/[State v. ]Bankston[, 63 N.J. 263 (1973),] and N.J.R.E. 404(b).

2. Detective Engstler's unqualified quasi-expert discussion of the techniques employed by pimps or human traffickers, improperly tracked the statutory elements of human trafficking and served as a backdoor opinion on [defendant]'s guilt.

3. Admission of this testimony was plain error.

A-0010-23

POINT V

[DEFENDANT]'S [SIXTY]-YEAR SENTENCE WITH [FORTY] YEARS OF PAROLE INELIGIBILITY WAS IMPROPERLY IMPOSED, AND THE $14,000 RESTITUTION ORDER WAS THE RESULT OF AN ESSENTIALLY RANDOM CALCULATION.

> 1. [Defendant]'s sentences on the human trafficking counts should have been run concurrent to one another.
>
> 2. The convictions for human trafficking and promoting prostitution should have merged.
>
> 3. The court's arbitrary restitution order must be vacated.

II.

We review unpreserved claims of inaccuracy in jury instructions for plain error. R. 2:10-2; State v. Gonzalez, 444 N.J. Super. 62, 70 (App. Div. 2016). Plain error is a deficiency "clearly capable of producing an unjust result." R. 2:10-2. Jury instructions "'must be read as a whole in determining whether there was any error,' . . . and the effect of any error must be considered 'in light of the overall strength of the State's case.'" Gonzalez, 444 N.J. Super. at 71 (first quoting State v. Torres, 183 N.J. 554, 564 (2005); and then quoting State v. Walker, 203 N.J. 73, 90 (2010)). "Clear and correct jury charges are essential

13

for a fair trial, and the failure to provide them may constitute plain error." Id. at 76; see also State v. Maloney, 216 N.J. 91, 104-05 (2013).

"Both the United States and the New Jersey Constitutions require jurors to reach a unanimous verdict in a criminal case." State v. Fair, 256 N.J. 213, 232 (2024) (citing U.S. Const. amends. VI, XIV; N.J. Const. art. I, ¶ 9). "Unanimity generally requires that jurors 'be in substantial agreement as to just what a defendant did' before determining" a defendant's guilt or innocence. Ibid. (quoting State v. Frisby, 174 N.J. 583, 596 (2002)).

The core and dispositive issue before us is whether the structure of the indictment, jury instructions, and verdict sheet permitted the jury to reach a unanimous verdict on the human trafficking counts. We conclude it did not. The indictment, instructions, and verdict sheet presented the jury with a disjunctive choice as to whether defendant violated N.J.S.A. 2C:13-8(a)(1) or (a)(2). Moreover, the jury did not receive any instructions on subsection (a)(2); they received only the model jury charge for (a)(1).

The respective statutes have distinct elements and carry significantly different penalties. N.J.S.A. 2C:13-8(a)(1) provides an individual commits the crime of human trafficking if one:

> (1) knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another,

to engage in sexual activity as defined in paragraph (2) of subsection a. of N.J.S.[A.] 2C:34-1 or to provide labor or services:

> (a) by causing or threatening to cause serious bodily harm or physical restraint against the person or any other person;

> . . . .

> (d) by destroying, concealing, removing, confiscating, or possessing any passport, immigration-related document . . . or other document issued by a governmental agency to any person which could be used as a means of verifying the person's identity or age or any other personal identifying information;

> . . . .

> or (g) by facilitating access to a controlled dangerous substance or controlled substance analog. . . .

> [N.J.S.A. 2C:13-8(a)(1).]

A violation of (a)(1) is a first-degree crime subject to a first-degree sentencing range of ten to twenty years, with no mandatory period of parole ineligibility. See N.J.S.A. 2C:13-8(b); N.J.S.A. 2C:43-7.2(d). In contrast, N.J.S.A. 2C:13-8(a)(2) provides that a person commits the crime of human trafficking if he "receives anything of value from participation as an organizer, supervisor, financier or manager in a scheme or course of conduct which

15

violates" N.J.S.A. 2C:13-8(a)(1).  A violation of (a)(2) carries a sentencing range of a minimum twenty-year sentence without parole eligibility to life imprisonment with twenty years of parole ineligibility.  N.J.S.A. 2C:13-8(d).

As detailed above, the verdict sheet for counts one and three combine the elements of the two subsections with an "or" between the elements of (a)(1) and (a)(2).  We reject the State's contention that the evidence adduced at trial makes it clear the jury intended to convict on subsection (a)(2).  The court did not instruct the jury it had to unanimously agree on which subsection defendant violated.  As the Supreme Court held in Fair, "jurors must unanimously agree that the defendant committed 'every element of the crime with which he is charged, beyond a reasonable doubt.'"  256 N.J. at 232 (emphasis in original) (quoting State v. Macchia, 253 N.J. 232, 252-53 (2023)).

Where a statute "'lists in the disjunctive [two] separately enumerated, alternative' crimes," the jury must be instructed that it must agree unanimously on which alternative it finds the defendant guilty.  Id. at 240 (quoting United States v. McCants, 952 F.3d 416, 426 (3d Cir. 2020)).  Similarly, in Gonzalez, we reversed convictions where the trial court's repeated use of "and/or" in the jury instructions created ambiguity as to whether the jury was unanimous as to all elements of the offenses.  444 N.J. Super. at 77.

Here, the use of "or" and "and/or" in the indictment, instructions, and verdict sheet, without a specific unanimity instruction, created a real risk that some jurors convicted under (a)(1) and others under (a)(2). The record does not permit us to determine whether the jury "actually found defendant guilty based on a shared vision of the evidence and through the application of clear and correct legal principles." Id. at 78 (citing State v. Simon, 79 N.J. 191, 206 (1979)). As in Fair and Gonzalez, we cannot be confident the jury reached a unanimous verdict as to the human trafficking counts. This is plain error requiring vacatur of the human trafficking convictions.

Neither did the court instruct the jury on the meaning of "organizer, supervisor, financier, or manager," terms that are essential elements of N.J.S.A. 2C:13-8(a)(2). In State v. Alexander, the Supreme Court held these terms are "material elements" in the context of the "drug kingpin" statute and must be defined for the jury. 136 N.J. 563, 575 (1994). The same terms appear in the human trafficking statute, and the Legislature's use of these terms of art indicates they should be defined consistently.

The failure to define these essential terms deprived the jury of the tools necessary to determine whether defendant's conduct satisfied the statutory requirements. This omission, while not alone dispositive, compounds the

17

ambiguity in the verdict and further undermines confidence in the jury's verdict on the human trafficking counts.

We briefly address defendant's remaining arguments challenging the admission of certain testimony by detectives and the purported mishandling of defendant's self-representation motion. Specifically, defendant asserts because his trial counsel denigrated his claims to the court, his attorney should not have been able to serve as even standby counsel and the court's failure to recognize that or inform defendant it could appoint a new public defender was error. Moreover, he submits the court abused its discretion by imposing arbitrary restrictions on the role of standby counsel. We conclude these arguments lack merit as counsel did not act improperly and the court gave the "extensive warnings" required in granting that motion. State v. Crisafi, 128 N.J. 499, 512 (1992).

Regarding the admission of the detectives' testimony, defendant argues by mentioning their awareness of a police report or a conversation with other officers in discussing how they initially became involved in the case, the detectives improperly suggested other individuals provided information connecting defendant to the crime. Moreover, he asserts Detective Engstler's discussion on pimps' techniques operated as unqualified expert testimony and

A-0010-23

"improperly tracked" the statutory elements. We conclude these arguments do not rise to the level of plain error, either individually or cumulatively, in light of the overwhelming evidence of guilt on the promoting prostitution counts and the lack of objection at trial. State v. Pressley, 232 N.J. 587, 594 (2018).

Defendant's argument regarding the admission of jail calls is unavailing as he was acquitted of the witness tampering charges to which those calls related.

Because we determine defendant's convictions for human trafficking must be vacated, we do not reach the propriety of the sentence imposed for those convictions or the restitution ordered. We are satisfied the court properly considered the relevant factors and explained its reasoning on the record in connection with the promoting prostitution convictions. The concurrent five-year terms for those convictions thus remain undisturbed.

To the extent we have not addressed defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

19