**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0393-14T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LATASHA M. BAKER,

      Defendant-Appellant.

_____

Submitted April 11, 2018 – Decided September 24, 2018

Before Judges Fuentes and Suter.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 12-08-2188.

Joseph E. Krakora, Public Defender, attorney for appellant (Jacqueline E. Turner, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

Suter, J.A.D.

Defendant Latasha M. Baker appeals the July 14, 2014 judgment of conviction following a jury trial, contending the court erred by not instructing the jury on the affirmative defense to felony-murder, by not suppressing statements she made to the police and by not granting her motion for judgment of acquittal. She also challenges her sentence as excessive. We affirm the convictions and sentence.

I

We relate these facts based on the record from defendant's trial. On October 14, 2009, Silvia Ramos Morales and her husband Oscar Hernandez were about to close their bakery in Woodlynne for the evening when defendant entered carrying a baby and asked to buy a slice of cake. She left when they did not have what she wanted but returned in a few minutes. Shortly after, three men came in. One had a mask and a gun. He followed Hernandez as he ran into the kitchen, fatally shooting Hernandez in the chest. The other men, who blocked the entrance, told two prospective customers not to enter. Sensing something was wrong, they alerted a police officer. The customers in the store were robbed. They told the police the men were armed. The robbers attempted but were not able to open the cash register, and left the bakery when the police arrived.

Defendant and her baby were in the bakery throughout this. Just after the incident, defendant told the police that a Hispanic man in a red jacket, who she did not recognize, "snatched" her cell phone. The next day, October 15, 2009, the police traced defendant's cell phone signal to her apartment, which was located on the same block as the bakery. After she consented to a search of the apartment for the phone, the officers found the cell phone under her couch.

The police interviewed defendant that day for three hours at the prosecutor's office and her statement was recorded. Defendant's explanation to the police about how the cell phone was in her apartment varied, but all the explanations indicated the robbers had to know her. She claimed the phone was returned to her by the robbers as a favor because she was a single mother, or to prevent her from calling the police. She speculated that she was being framed and that a neighbor was involved in the robbery. Further, she claimed it could have been her neighbor's sister's boyfriend. Defendant also claimed she spoke to her brother, Rashawn Carter, twice that day around the time she entered the bakery. Following her interview, the police took her home.

On October 22, 2009, defendant agreed to be interviewed again at the prosecutor's office. This interview was for ten hours. By this time, the police had reviewed surveillance video from the bakery that showed defendant leaving

the bakery and returning, a fact she had not mentioned to the police during the October 15, 2009 interview. She explained to the police that she left to go to another store. However, the officers pointed out that the store was in the opposite direction from her movements depicted on the videotape.

Defendant's phone records showed she made eighteen calls to her brother Rashawn Carter, just before and after the robbery occurred, not one or two calls as she said in her pervious interview. Historical cell site analysis revealed that both defendant's and her brother's phones were located near the bakery at that time. Defendant claimed that her sister must have used her phone.

The police asked defendant to take a lie detector test. She declined to do so saying "I don't know, I don't know, I don't think I should take it. If . . . they think I'm the suspect then . . . I should wait until I get a lawyer or something." The interview continued after that. The police did not administer Miranda[1] warnings before taking either statement.

Other evidence about the robbery was presented at trial. Eddie Ball, the father of one of defendant's children, identified Rashawn Carter from a videotape of the robbery; Carter was wearing Ball's distinctive red jacket that he had left at defendant's apartment. The customers, who were turned away when

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0393-14T3

the robbery was in progress, also identified Rashawn Carter as one of the men at the bakery. Michael Streater testified that in November 2009, he and William Cooper were cellmates, and Cooper told him that he shot someone at the bakery. The victim's wife testified about her identification of the man who shot her husband. The police arrested Rashawn Carter and William Cooper as they were hiding in a pantry closet at defendant's sister's house.

Following defendant's indictment, she filed a motion to suppress her October 15, 2009 and October 22, 2009 statements. The motion judge denied the suppression of the October 15, 2009 statement, but granted in part the suppression of the October 22, 2009 statement. With respect to the October 15 statement, the court found:

> [t]he totality of the circumstances, including the duration, location, time, nature of the questions, language employed in the interrogations, the conduct of the police, the status of the interrogators, status of the suspect, and all the other relevant factors, including her experience, her history, her knowledge, her expressions, her background, indicate that on balance that was clearly not a custodial interrogation. And . . . objectively, looking at the totality of the circumstances, a reasonable person in the defendant's position would have concluded that . . . [t]here was no significant deprivation of her freedom.

However, the court did not have the same "comfort level" with the October 22, 2009 statement. The court found the October 22 interview was lengthy and

5

that the tone of the interview changed over time.  The record shows defendant

stated, "if they think I'm the suspect then . . . I should wait until I get a lawyer

or something," meaning if she were a suspect then she wanted counsel. The

interrogating police officers accused defendant of protecting someone.  They

asked defendant whether she wanted to go home.  The court found:

> that Miranda . . . applies . . . in light of the tone, in light of the nature of her response . . . , and in light of what went on thereafter, . . . [a]nd her concerns and her perception of her status and the nature of the interrogation from that point on militate in favor of the defense and constitute invocation of Miranda and should be excluded under Miranda.

The court suppressed the part of defendant's statement that was tainted by these

interrogation tactics.

The jury convicted defendant of first-degree felony-murder, N.J.S.A.

2C:11-3(a)(3); second-degree robbery, N.J.S.A. 2C:15; second-degree

conspiracy to commit robbery, N.J.S.A. 2C:5-2; and fourth-degree hindering

apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4).  After merging the

relevant charges, the judge  sentenced defendant on the felony-murder count to

a term of forty-five years imprisonment, subject to an eighty-five percent period

of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2, five

6

years of parole supervision and a consecutive term of eighteen months for hindering apprehension.

## II

On appeal, defendant raises the following issues:

POINT I

THE TRIAL JUDGE ERRED IN NOT CHARGING THE JURY WITH THE AFFIRMATIVE DEFENSE TO FELONY MURDER, AS PROVIDED BY N.J.S.A. 2C:11-3a(3)(a)-(d). (Not Raised Below)

POINT II

THE TRIAL COURT ERRED IN FINDING THAT MS. BAKER WAS NOT IN CUSTODY AT THE TIME SHE WAS BEING INTERROGATED BY THE POLICE. U.S. Const. Amends. V, XIV; N.J. Const. Art. I, para. 10.

POINT III

THE TRIAL JUDGE ERRED IN DENYING THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON THE CONSPIRACY COUNT AS THERE WAS NO EVIDENCE OF AN AGREEMENT PUT BEFORE THE JURY

POINT IV

THE DEFENDANT'S SENTENCE IS EXCESSIVE.

A

In argument Point I, defendant contends that the trial court should have charged the jury with the affirmative defense to felony-murder. See N.J.S.A. 2C:11-3(a)(3)(a)-(d). We review this issue under the standard of plain error, meaning an error "clearly capable of producing an unjust result," because it was not previously raised to the trial court. See R. 2:10-2.

The Criminal Code provides an affirmative defense to felony murder where a defendant is not the only participant in the underlying crime and the defendant:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
>
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
>
> (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
>
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.
>
> [N.J.S.A. 2C:11-3(a)(3)(a)-(d).]

8

Defendant argues the trial court should have given the affirmative defense charge because she was acquitted of conspiracy to commit armed robbery and she did not know the other participants were armed. However, at trial, defendant contended she was not a participant in the robbery at all. The affirmative defense charge was not consistent with her defense strategy because it was a defense based on actions she claimed she did not do. Thus, it was not plain error for the trial court to charge felony murder without the affirmative defense when to do so was not consistent with defendant's defense strategy. See State v. Daniels, 224 N.J. 168, 184 (2016).

B

Defendant contends the trial court should have suppressed her October 15, 2009 statement and all of her October 22, 2009 statement to the police.[2] Defendant argues the police had a strong suspicion by October 15 that she was involved in the robbery. According to defendant, their aggressive questioning after her cellphone was found in her apartment revealed they viewed her as a suspect. Then, on October 22, 2009, she was confronted with her cell phone records and the police asked her to take a lie detector test. Although the motion judge suppressed a portion of the October 22 statement she contends all of her

---

[2] Defendant acknowledges she was not in custody when she gave her first statement to the police on October 14, 2009, and did not seek its suppression.

statements "were an integral part of the State's case" and should have been suppressed. We disagree.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 426 (2017) (citing State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alterations in original) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015) (citing State v. Vargas, 213 N.J. 301, 327 (2013)).

Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." State v. Hubbard, 222 N.J. 249, 265-66 (2015) (quoting Miranda, 384 U.S. at 444). In determining whether a custodial interrogation has occurred, a court must examine all circumstances

surrounding the interrogation. State v. O'Loughlin, 270 N.J. Super. 472, 477 (App. Div. 1994). "The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances . . . ." Hubbard, 222 N.J. at 266-67 (quoting State v. P.Z., 152 N.J. 86, 103 (1997)). The inquiry is "'how a reasonable [person] in the suspect's position would have understood his situation.'" Id. at 267 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). The State must also prove a defendant's statement was freely and voluntarily given. State v. Hreha, 217 N.J. 368, 383 (2014).

We discern no error by the motion judge. The question is not as defendant has posed it, whether the statements were an integral part of the State's case, but whether she reasonably believed she was not free to leave. The motion judge carefully analyzed each statement under the factors described in State v. Brown, 352 N.J. Super. 338, 352 (App. Div. 2002). We agree based on his analysis that defendant's October 15, 2009 statement was not the result of a custodial interrogation. Defendant was only asked at that time to explain how the stolen cell phone was returned to her house. By the time she was questioned on October 22, 2009, however, the police had more information from the cell phone records and the surveillance video and asked her about inconsistencies from her

prior statements. The fact that the interview is conducted at the prosecutor's office did not make this a custodial interrogation. See State v. Micheliche, 220 N.J. Super. 532, 536 (App. Div. 1987) (questioning in a police station does not necessarily establish custody). The fact that the police may have a suspicion that she was involved in the crime does not convert the interview to a custodial interrogation. See State v. Nyhammer, 197 N.J. 383, 406 (2009).

Here, the motion judge's order was based on the change in the tone of the interview toward defendant when she declined to take a lie detector test, expressing she wanted a lawyer if she were a suspect. We agree with the motion judge that a reasonable person could have concluded she was not free to leave at that point.

## C

Defendant contends the trial judge erred by denying her motion for acquittal under Rule 3:18-1 on the conspiracy count, arguing there was no evidence of a conspiracy. Our standard of review is whether there was sufficient evidence to warrant a conviction. R. 3:18-1. See State v. Reyes, 50 N.J. 454, 458-59 (1967) (providing that the issue is whether there is sufficient evidence for a reasonable jury to find guilt beyond a reasonable doubt "giving the State the benefit of all its favorable testimony as well as all of the favorable inferences

which reasonably could be drawn therefrom."). The essential requirement of a conspiracy is an agreement with another person to engage in conduct that is a crime or an attempt to do so or to agree to aid another with planning or commission of a crime or attempt to do so. N.J.S.A. 2C:5-2(a)(1)-(2); See In re State ex rel. A.D., 212 N.J. 200, 222 (2012).

Here, there was sufficient credible evidence that defendant was part of the plan to commit robbery. She was in communication with the robbers before and after it, appeared to act as a look out, misled the police about the return of her cell phone and then about the identity of the robbers. This was sufficient to deny the motion for acquittal.

D

Finally, Defendant argues her forty-five year sentence for felony murder and consecutive eighteen-month term for hindering is excessive because she did not have a weapon or know that the other participants were armed. We reject defendant's contention that her sentence was excessive. Our review of a sentencing determination is limited. State v. Roth, 95 N.J. 334, 364-65 (1984). We review a judge's sentencing decision under an abuse of discretion standard. Id. at 363-64. We must determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the

13

> sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting Roth, 95 N.J. at 364-65).]

Here, the court found aggravating factors: N.J.S.A. 2C:44-1(a)(3) the risk of re-offense; (6) the extent of defendant's prior criminal record and the seriousness of the offenses; and (9) the need to deter. It placed significant weight on factor three because of defendant's "consistent life of crime since the age of 19" and her failed opportunities for rehabilitation. It placed moderate weight on factor six considering that none of her prior offenses involved violence. The court placed significant weight on factor nine, the need to deter.

The court found no mitigating factors. Defendant contends the court should have considered defendant's children in mitigation. The court found "she put her own selfish interests before those of her one-year-old child, who was running around the store as the three armed robbers burst into the store." The court considered her prior criminal record. There was nothing erroneous about the court's analysis nor did the sentence shocks one's conscience, given the nature of the offenses. The sentence was within the sentencing guidelines. We thus discern no abuse of discretion.

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15